# United States Court of Appeals
## For the First Circuit

No. 12-1422

ROBERT S. SNYDER,

Plaintiff, Appellee,

v.

RALPH E. GAUDET; PATRICK POWELL,

Defendants, Appellants,

BERNADETTE D. SEWELL; CITY OF WALTHAM; SERAFINA COLLURA;
JEANNETTE A. MCCARTHY,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lynch, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Bernadette Dunn Sewell, Assistant City Solicitor, City
of Waltham Law Department, for appellants.
Zaheer A. Samee, with whom Leonard A. Frisoli and
Frisoli Associates, P.C., were on the brief, for appellee.

June 25, 2014

**KAYATTA, Circuit Judge**.  Robert Snyder operated a business in a building he owned, and shared with two tenants, in a mostly residential area of Waltham, Massachusetts.  After Snyder fired an employee who was a member of the Waltham city council, the former employee complained to the city building department that Snyder was using his property unlawfully.  Code enforcement officers then scrutinized Snyder's use of his property and fined him under a local land use ordinance.  Snyder eventually brought this suit under 42 U.S.C. § 1983 against the city of Waltham and five individuals, claiming a violation of his right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.  After unsuccessfully seeking summary judgment based on immunity defenses, two of the individual defendants filed this appeal.  Finding that they are entitled to judgment as a matter of law, we reverse.

## I. Background

In reviewing an interlocutory appeal from a denial of qualified immunity, we accept as given the facts that the district court ruled could be found by a reasonable jury viewing the evidence in the light most favorable to the plaintiff. See Johnson v. Jones, 515 U.S. 304, 313-19 (1995).  We do not entertain challenges to the inferences drawn by the district court in doing so or to its determinations regarding the evidentiary support for the plaintiff's claims. See id.; Cady v. Walsh, ___ F.3d ___, ___,

-2-

2014 WL 2518865, at *10 (1st Cir. June 4, 2014).  We can consider an interlocutory appeal of this kind, then, to the extent the appellants ground their arguments in the record as viewed most favorably to the plaintiff, leaving undisturbed all factual inferences implied by the district court's decision.  See Johnson, 515 U.S. at 319.  Here, while Gaudet and Powell sometimes stray from that path in their brief, the facts that ultimately prove dispositive are those that both sides agree we can assume to be true for purposes of this appeal.  We describe those facts below, adding some additional context.

Snyder's difficulties with the city began when he fired an employee, Serafina Collura, who served as a member of the Waltham city council.  Collura soon complained to the city's building department that Snyder's use of his building violated a land use ordinance because, according to Collura, Snyder rented a portion of the second floor as a residence.  Collura continued to pressure city officials to investigate Snyder over the following months.

Appellants Ralph Gaudet and Patrick Powell were Waltham's superintendent of public buildings and senior building inspector, respectively.  Gaudet and Powell eventually did investigate Snyder.  The district court found it reasonable to infer, and we accept for purposes of this appeal, that Gaudet and Powell knew of Collura's motivations and acted "in aid of [her] efforts."  Powell inspected

-3-

Snyder's property twice in February 2007, approximately seven months after Collura first complained. Although Powell initially indicated in a conversation with a city attorney that he had found no violations during his inspections, he later issued a citation to Snyder in June 2007. We assume that Powell's about-face can be attributed to pressure from Collura.

In the citation, Powell found that Snyder had violated a zoning variance issued to the original owner of the building in 1967 by using it for purposes other than professional offices. The original owner, an optometrist, had sought to use the property for three medical offices and received a variance allowing its use as "professional offices." The original owner sold the property to another optometrist, who sold to Snyder in 1997. The parties dispute whether the variance allowed use of the second floor as a residence, but we need not consider the issue, because we accept solely for purposes of our consideration of this interlocutory appeal that Snyder never engaged in such residential use.

Snyder maintains that he complied with the variance because the building was used entirely for professional offices. But he has admitted the truth of several facts described in Powell's citation. First, Powell found, and Snyder has conceded,

that one room in the building was used to perform massages.[1] Second, he has conceded that a second room was used as the office of a roofing contractor, who he says also used it for work as a paralegal. Finally, Powell found that Snyder used his own office as a "warehouse" for "receiving and shipping." Although Snyder disputes the characterization of his own office as a "warehouse," he admits that he used it to store the small metal components his company manufactures for eventual shipment to customers.

Powell's citation instructed Snyder to either cease and desist from violations of the variance, or show evidence that he was applying to the city's zoning board of appeals to modify the variance. If he did neither, he would face fines escalating to $300 per day. Snyder eventually pursued a modification, but the zoning board of appeals did not grant one. Meanwhile, the city issued several fines to Snyder, starting with a $50 fine in November 2007 (about four months after the citation issued), followed by further fines in May 2008, at which time Snyder was told that he would continue to be fined $300 for each additional day that passed until he corrected the violation.

Snyder contested the fines in the Waltham district court, which denied their enforcement in December 2008. Approximately two

---

[1] According to the tenant who performed massages, she was not a licensed masseuse, and although she also worked as a nurse, nothing she did on Snyder's property related to nursing. Snyder does not dispute this testimony.

and a half years later, the court entered a docket entry, at the behest of an attorney for Waltham, to "clarify" that it had found sufficient evidence of a violation but had dismissed the fine because Snyder had later come into substantial compliance.

## II. Standard of Review

As noted above, we have jurisdiction only to consider Gaudet and Powell's legal argument that, on the facts described above, they were entitled to immunity. On that legal issue, our review is de novo. Suboh v. District Attorney's, 298 F.3d 81, 90 (1st Cir. 2002).

## III. Analysis

To assess qualified immunity, we ask whether a government official "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014) (internal quotation marks omitted). For a right to be clearly established, "existing precedent must have placed . . . beyond debate" that the "particular conduct" at issue violated the plaintiff's rights. Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083-84 (2011).

In the district court, Snyder alleged that Gaudet, Powell, and the other defendants violated his rights to equal protection and substantive due process under the Fourteenth Amendment, and his right to be free from unreasonable seizure under the Fourth Amendment, and that they conspired to do so. The

defendants moved for summary judgment, claiming among other points that Gaudet and Powell were entitled to qualified immunity. The district court denied that motion as to all claims and all defendants. On this appeal, Snyder relies only on his equal protection claim to defeat Gaudet and Powell's assertion of qualified immunity, thereby waiving any argument that the other claims survive the immunity defense. See Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003). Snyder also asserts before us a violation of the Excessive Fines Clause of the Eighth Amendment, but he never presented that claim to the district court, so we will not consider it. See Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 774-75 (1st Cir. 2010). We therefore train our review on his only preserved federal claim against these defendants: his equal protection claim.[2]

Because Snyder contends that the government singled him out for differential treatment for reasons unique to him, rather than because of his membership in any group, his equal protection claim is of the "class of one" variety. See id. In such an equal protection claim, Snyder must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). In claims such as

---

[2] Snyder's complaint also raised several state law claims, which are not at issue on this appeal.

Snyder's, the plaintiff ordinarily must also show that the defendant's differential treatment of the plaintiff was motivated by "bad faith or malicious intent to injure," Rubinovitz v. Rogato, 60 F.3d 906, 911 (1st Cir. 1995), but we need not reach that requirement because we find that Snyder cannot prevail in showing differential treatment.

In a class of one equal protection claim, proof of a similarly situated, but differently treated, comparator is essential. See Cordi-Allen v. Conlon, 494 F.3d 245, 250 (1st Cir. 2007). In particular, "plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Id. at 251 (internal quotation marks omitted). They must show that they "engaged in the same activity . . . without such distinguishing or mitigating circumstances as would render the comparison inutile." Id. Moreover, this requirement "must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" Id. (quoting Olech, 528 U.S. at 565 (Breyer, J., concurring)). Snyder has not argued that the rigorous similarity requirement should be relaxed due to any special circumstance of his case.

Snyder does not point to any owner of another building, operating under a similar variance, who was allowed to use that other building as Snyder used his own. Instead, Snyder says he was

treated differently than the prior owner of this particular property, who received a letter from Gaudet in 1994 stating that his use of the property was acceptable under the variance. In particular, according to the letter, the prior owner could use the "first floor office for Optometry" and the second floor for "residential use for the Optometrist and his/her family." Snyder points to this letter as proof that he was treated differently than the prior owner.

But Snyder also admits that he and his tenants used the property in very different ways than the prior owner: not for providing personal services by medical professionals but rather for, among other things, coordinating contract work for roofing and paralegal services, and facilitating Snyder's business manufacturing small metal components. These differences are relevant to the city's actions in this case. The variance was first requested and obtained by an optometrist who sought to use the building for medical offices. The next owner continued to use the building as an optometry office, and Gaudet's 1994 letter confirmed that this use was acceptable. In other words, both prior owners used the building exactly as the city had originally authorized it to be used. Snyder's use, in contrast, departed significantly from that original purpose. These undisputed facts separate this case from those in which we have allowed an equal protection claim to proceed, such as where multiple landowners

installed plumbing with no permit, in materially identical circumstances, but only one was required to disconnect the plumbing.  Rubinovitz, 60 F.3d at 910-12.

Snyder nevertheless maintains that the differences between his use and that of the prior owner were immaterial because both used the building for "professional offices."  We are skeptical that a roofing contractor and the owner of a manufacturing company, for example, qualify as professionals under the variance, as Snyder urges us to conclude.  But even if we were to so conclude, our task is not to decide in the first instance how the variance should be applied.  Rather, we need only to determine if there was a rational basis for distinguishing between Snyder and the prior owner.  See Cordi-Allen, 494 F.3d at 250-51.  In other words, the similarly situated standard requires more than a showing that the government erred in applying authority open to interpretation in a novel situation.[3]  See id. at 251 (explaining that "[t]he 'similarly situated' requirement furnishes the limiting principle" that prevents "virtually every zoning decision" from leading to an equal protection case).

---

[3] Because the undisputed facts make clear that there was a rational basis for distinguishing between Snyder and the prior owner, we need not consider the effect of the statement issued by the Waltham district court, two and a half years after the end of the enforcement proceedings, that he had failed to comply with the variance.

Snyder's claim is also weakened by the passage of thirteen years between Gaudet's letter to the prior owner in 1994 and the city's citation of Snyder in 2007. We have noted that "the most reliable comparisons are likely to be from roughly the same time frame," particularly in the land-use context, where "differential treatment following a time lag . . . may indicate a change in policy rather than an intent to discriminate." Id. at 253. Here, indeed, the city may have changed its policy regarding the enforcement of variances. Gaudet and Powell point to a city ordinance passed in 2005 that arguably affected the degree of discretion afforded to city officers in applying variances. Snyder offers no rebuttal to the defendants' claim that the ordinance distinguishes his situation from that of the prior owner.

Given the undisputed facts, no law clearly established at the time Gaudet and Powell acted would allow Snyder to prevail on his equal protection claim by showing he was treated differently than the prior owner. And he fares no better in his attempt to compare how the city treated him after he fired Collura to how it treated him before he did so. Snyder cites no case suggesting, let alone clearly establishing, that a plaintiff in an equal protection case can use himself as a comparator. On the contrary, the Supreme Court and this court have always described equal protection claims as based on differential treatment between one person, or a group of people, and "others similarly situated." E.g., Olech, 528 U.S.

at 564 (emphasis added).  We are doubtful Snyder can use himself as his own comparator, as accepting that approach would have broad implications, converting any claim of retaliation (for any reason) into an equal protection case, and effectively eliminating the differential treatment element of equal protection claims. Nonetheless, we need not resolve that question because, as a factual matter, Snyder does not allege that Gaudet, Powell, or anyone in the city's building department knew before he fired Collura how he was using the property, so there would appear to be no differential treatment even if he were allowed to be his own comparator.

## IV. Conclusion

We acknowledge that many citizens looking at the facts of this case would perceive an abuse of government power.  Indeed, we have assumed, solely for the purposes of this appeal, that Collura acted in bad faith, and that Gaudet and Powell knowingly contributed to her retaliatory effort.  But local governments make countless decisions every day, many of which inevitably disadvantage someone who can credibly claim that a local official acted out of personal hostility.  This is especially so in our smaller cities and towns, where many people know their public officials.  State and local law often provides recourse for challenging the imposition of fines or the burdens of administrative rulings by local officials that violate state or

local law.  So, too, the political process may provide a venue for correcting or deterring abuses.  And federal courts obviously play an important role in adjudicating claims that such abuses violate federal law.  Where, as here, however, municipal officials did not violate any clearly established federal law, federal law provides no basis for making local government officials pay damages.

We therefore reverse the district court's denial of Gaudet and Powell's motion for summary judgment on Snyder's federal claims.

So ordered.