# United States Court of Appeals
## For the First Circuit

No. 15-1320

NAJAS REALTY, LLC; PETRA BUILDING CORPORATION,

Plaintiffs, Appellants,

v.

SEEKONK WATER DISTRICT; ROBERT BERNARDO, individually and in his
capacity as the Superintendent of the Seekonk Water District,

Defendants, Appellees,

CHRISTOPHER HALKYARD, in his capacity as member of the
Seekonk Water Board; CHRISTINE ALLEN, in her capacity
as member of the Seekonk Water Board; PHILLIP CAMPBELL,
in his capacity as member of the Seekonk Water Board;
JOHN DOES 1-10; JANE ROES 1-10; XYZ CORPORATIONS 1-10,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Judith G. Dein, U.S. Magistrate Judge]

Before

Torruella, Lynch, and Thompson,
Circuit Judges.

Eric S. Brainsky, with whom Michael E. Levinson was on brief,
for appellants.
John Joseph Davis, with whom Seth Brandon Barnett was on
brief, for appellees.

May 2, 2016

**THOMPSON**, **Circuit Judge**.  This action stems from the plaintiffs' purchase of a piece of land and the opposition the defendants mounted to the plaintiffs' plan to develop that property.  Plaintiffs responded by filing suit, claiming the defendants' conduct violated various constitutional and state law provisos but the suit never made it past the pleadings stage.  The district court granted judgment on the pleadings in favor of the defendants and, after taking a fresh look, we affirm.

## I. FACTUAL BACKGROUND

Since this appeal follows a judgment on the pleadings, we take the facts from the pertinent pleadings and, here, that means the amended complaint,[1] the answer, the defendants' motion for judgment on the pleadings, and the plaintiffs' opposition thereto (with attached meeting minutes).  Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 43 (1st Cir. 2012).

Plaintiff Najas Realty, LLC ("Najas") is a real estate development and property holding company and plaintiff Petra Building Corporation ("Petra") is a home building company.  Both are based in Rhode Island and both have the same principal owner.  Defendant Seekonk Water District (the "Water District") is an independent governmental entity charged with ensuring and

---

[1] For the most part, and for ease of reference, we will refer to this as the complaint.  The exception will be when we need to distinguish between different versions of the complaint.

maintaining safe drinking water in Seekonk, Massachusetts (the "Town").    Defendant Robert Bernardo is the Water District's Superintendent.

In early 2012, Najas purchased a ten-acre parcel of land in Seekonk (the "Property").  It filed a preliminary subdivision plan application with the Seekonk Planning Board seeking to construct a ten-lot subdivision on the Property, to be called Pine Hill Estates (the "Pine Hill project").

The Seekonk Board of Health met to discuss the proposal and Bernardo spoke at the meeting.  He expressed concern, which the plaintiffs call bogus, that the proposed subdivision could impact the Town's public water supply given its proximity to one of the Town's wells, known as GP-4.  Bernardo contended that the soil in the vicinity of GP-4 had elevated nitrate levels due to a malfunctioning septic system that serviced a nearby middle school, and he asked the Board to consider this fact when contemplating whether and how the Property should be developed.[2]  After some debate, the Board of Health decided to require Najas to perform a nitrate loading analysis as part of its definitive plan submission, which, according to plaintiffs, was a costly endeavor.

---

[2] According to Bernardo (said at a later meeting), nitrates are "organic compounds and when found in drinking water it is typically from sewage disposal systems or fertilizers; they are colorless, tasteless, and odorless and can't be boiled away."

Later on in the meeting, after the plaintiffs' representative had left, Bernardo and the board members spoke more about how to deal with the potential impact of the Pine Hill project, at which point Bernardo said (among other things) that he wanted Najas "to go away" and that it should be made to "jump every hurdle." Bernardo also explained that Najas had outbid the Water District, which, at some point, had tried to purchase the Property in an effort to "protect" it.[3]

The Town's Board of Selectman also convened to discuss the Pine Hill project.[4] Bernardo appeared at that hearing and repeated his concerns about increased nitrate levels in the area of the Property. He suggested that increased nitrates from the Pine Hill project's proposed septic systems could lead to health issues for

---

[3] In their motion for judgment on the pleadings, defendants claim that it was actually the Seekonk Community Preservation Committee, and not the Water District, that sought to purchase the Property but that the Water District supported this proposed purchase out of concern that any development of the site would threaten the Town's public water supply. However, in the minutes of one of the meetings where Pine Hill was discussed, Bernardo indicated that the Water District had tried to purchase the property.

[4] Around this same time, Najas had another residential development in the works, Orchard Estates. Najas and the Water District butted heads over that project too. With Bernardo claiming water quality concerns, the Water District voted to require Najas to "loop" the Orchard Estates water line, as opposed to allowing a less costly "dead ended" line. In the complaint, Najas suggests that this costly requirement came at the eleventh hour, causing substantial construction delays and further damages, and was simply another attempt to harass and hinder Najas.

the residents of Seekonk, including the risk of pregnant or nursing mothers having their infants contract "Blue Baby Syndrome," a severe medical condition that causes infants to asphyxiate. Bernardo reiterated similar concerns at a joint meeting between the Board of Health, the Board of Selectmen, and the Water District, which was convened given the concerns that had been raised about the Pine Hill project. Again, according to plaintiffs, the unease Bernardo voiced was unfounded.

A couple of months later, following Najas's completion of the special nitrate loading analysis and submission of its definitive subdivision plan, the Board of Health met to discuss the plan. There plaintiffs presented evidence that purported to show that the Pine Hill project satisfied the regulatory requirements for septic systems and that the nitrate levels in the area of the GP-4 well were within regulatory limits. The Board of Health voted to approve the nitrate loading analysis and the Pine Hill project.

The Planning Board held a public hearing a month later. Although the Planning Board's peer review engineer had not raised any concerns regarding the nitrate level in the area or potential groundwater contamination, Bernardo appeared at the meeting to again voice worry about the Pine Hill project's impact on the public water supply, including the potential health consequence of

Blue Baby Syndrome.[5]  He suggested that the project could cause the Town to spend hundreds of thousands of dollars dealing with the increased nitrates and that the data Najas engineers had submitted to the Board of Health was false.  After convening to review the data, the Planning Board denied the Pine Hill project.

Najas appealed to the Massachusetts Land Court and ultimately settled that matter by agreeing to reduce the number of lots from ten to nine and to shorten the road length.  The Planning Board took up the revised plan at another public meeting; again Bernardo was there sounding the alarm on the water contamination issues. This time the Planning Board approved the Pine Hill project. Undeterred, the Water District filed a petition with the Planning Board to rescind and/or modify the approved plan.

Prior to the hearing on the petition, according to the plaintiffs, Bernardo embarked on a campaign of defamation, spreading the same supposed falsehoods about the Pine Hill project leading to public water contamination and Blue Baby Syndrome.  At the Planning Board hearing, Bernardo raised the same health concerns, again cautioned the board about the potential cost to the Town, and suggested that potential buyers of the future homes could be opening themselves up to legal action.  The Planning Board was not convinced and it denied the Water District's

_____

[5] Prior to the meeting, a Planning Board member raised concerns similar to Bernardo's in a local newspaper article.

petition.  The Pine Hill project went ahead as planned, though the plaintiffs claim one more transgression, which is the Water District unreasonably delaying acting on Najas's application to connect the Pine Hill project to the public water supply infrastructure.

## II. TRAVEL OF THE CASE

The plaintiffs filed suit, the operative complaint for our purposes being the amended complaint.  In essence, it alleged that the concerns Bernardo raised about the Pine Hill project's impact on the Town's water supply were baseless, inflammatory, and defamatory, and part of a retaliatory campaign by Bernardo and the Water District meant to "interfere with and ultimately destroy" the plaintiffs' businesses and reputations.  The plaintiffs' theory was that the defendants were seeking to punish the plaintiffs for outbidding the Water District on the Property, to penalize them for seeking to develop it, and to coerce them into abandoning the project.  Plaintiffs alleged that they suffered hundreds of thousands of dollars in damages, some stemming from home buyers walking away from lots they had reserved.

As for the legal nuts and bolts, the plaintiffs claimed that Najas deprived them of their constitutional rights, pursuant to 42 U.S.C. § 1983, and state law rights, citing the state-law analogue to § 1983, the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws Ann. ch. 12, § 11I.  Counts I and III contained First

- 8 -

Amendment retaliation claims that, respectively, concerned Najas's right to petition and freedom of speech, with Counts II and IV presenting the corresponding Massachusetts claims.[6] Count XI was a Fourteenth Amendment equal protection claim; Count X was its state law equivalent. And rounding out the constitutional claims was Najas's Fourteenth Amendment substantive due process claim, again both federal and state (Counts XII and XIII). Finally, there was Count XV, this one on behalf of both Najas and Petra, for tortious interference with advantageous business relations.

A few months after answering the amended complaint, the defendants, pursuant to Federal Rule of Civil Procedure 12(c), moved for partial judgment on the pleadings seeking dismissal of the above-chronicled counts. Defendants maintained that the plaintiffs had failed to mount a single viable cause of action.

Plaintiffs opposed the motion, claiming that they had met their pleading burden and, for support, attached the meeting minutes from various pertinent board meetings. The plaintiffs also sought leave to file a second amended complaint. The proposed augmentations had to do with the plaintiffs' equal protection claim; specifically, plaintiffs sought to identify similarly

---

[6] We chart only the relevant counts. There were others (e.g., declaratory judgment and defamation counts) that the plaintiffs voluntarily dismissed and, therefore, are not relevant to this appeal.

situated comparators and the disparate treatment they were subject to.[7]

The district court was unconvinced on all fronts. It ruled for the defendants, granting judgment in their favor on all of the disputed counts due to the plaintiffs' failure to state any viable claims. The court also denied plaintiffs' motion to amend the amended complaint. It concluded that the motion was futile because, even with the new additions, the proposed second amended complaint failed to state an equal protection claim. After the court granted the plaintiffs' motion to voluntarily dismiss the remaining counts, final judgment was entered.

Plaintiffs timely appealed. To this court, they maintain that the district court required too much at the pleading stage and that the allegations plaintiffs put forth were more than sufficient to warrant a denial of the motion for judgment on the pleadings.

### III. STANDARD OF REVIEW

We review de novo a trial court's order entering judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and dismissing the complaint. Elena v. Municipality of San Juan, 677 F.3d 1, 5 (1st Cir. 2012). We take all well-pleaded facts in the

---

[7] More to be said later but this information could have been relevant since plaintiffs were advancing a class of one equal protection theory.

light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008). If, after we separate these accepted-as-true factual allegations from any conclusory legal ones (these need not be credited), Grajales, 682 F.3d at 45, we find that "the complaint fails to state facts sufficient to establish a claim to relief that is plausible on its face," we must affirm the trial court's judgment on the pleadings. Gray, 544 F.3d at 324 (citation omitted).

## IV. DISCUSSION

Before getting underway with our analysis, we deal with a couple of preliminary issues. With respect to the § 1983 claims, plaintiffs must plausibly plead two essential elements, "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013). There is no dispute that Bernardo was acting under the color of state law and, therefore, we focus on whether his conduct encroached on the plaintiffs' constitutional rights.

Further narrowing things is the fact that the parties agree that the MCRA and § 1983 operate co-extensively and so we will not

- 11 -

conduct any separate state law analysis.[8] <u>Lyons</u> v. <u>Nat'l Car Rental Sys., Inc.</u>, 30 F.3d 240, 245-46 (1st Cir. 1994) (citing <u>Batchelder</u> v. <u>Allied Stores Corp.</u>, 473 N.E.2d 1128, 1131 (Mass. 1985)).

With that said, we proceed to plaintiffs' claims.

### A. First Amendment Claim

When a government actor retaliates against someone for exercising constitutionally protected First Amendment rights, that individual has a cognizable retaliation claim pursuant to § 1983.[9] <u>Powell</u> v. <u>Alexander</u>, 391 F.3d 1, 16 (1st Cir. 2004). To make out a valid claim, a plaintiff must first show that his conduct was constitutionally protected and, second, he must show proof of a causal connection between the allegedly protected conduct and the supposedly retaliatory response. <u>Goldstein</u> v. <u>Galvin</u>, 719 F.3d 16, 30 (1st Cir. 2013).

---

[8] There are a couple differences between the MCRA and § 1983, the only pertinent one for our purposes being that "the MCRA is narrower than § 1983 in that it limits its remedy to conduct that interferes with a secured right 'by threats, intimidation or coercion.'" <u>Nolan</u> v. <u>CN8</u>, 656 F.3d 71, 76 (1st Cir. 2011) (citing Mass. Gen. Laws Ann. ch. 12, § 11H). Because we find that the facts alleged do not amount to viable § 1983 claims, they would necessarily fail to pass this narrower test.

[9] This is the general rule for how to state a cognizable retaliation claim but, as we will explain, things are a little different when the alleged retaliatory act is itself government speech.

On the first point, the First Amendment protects (among other things) the right to free speech and the right to petition all branches of the government. Powell, 391 F.3d at 16. The plaintiffs here claim to have exercised both such rights, the protected petitioning conduct being Najas's submission of the Pine Hill project applications, and the free speech being Najas speaking in favor of the Pine Hill project, a matter of public concern according to plaintiffs.

However, we are not sure we can get on board with plaintiffs' contention that they engaged in protected petitioning conduct and free speech. It is not clear that Najas's submission of a development application would be constitutionally protected petitioning conduct. Compare EJS Props., LLC v. City of Toledo, 698 F.3d 845, 863 (6th Cir. 2012) (finding that a zoning request, because it is akin to generally seeking redress from a government official, constitutes protected petitioning conduct), with WMX Tech., Inc. v. Miller, 197 F.3d 367, 372 (9th Cir. 1999) (concluding that an application for a major use permit was not equivalent to a constitutionally protected petition for redress to the government). And it is questionable whether Najas's advocating as a developer for one of its projects would comprise commentary on a matter of public concern, such that it is constitutionally protected speech. See Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 132 (1st Cir. 1997) (providing

- 13 -

that issues of public concern are those "fairly considered as relating to any matter of political, social, or other concern to the community").

But, because it is clear that plaintiffs cannot satisfy the second prong of the test -- establish a causal connection between the protected conduct and the alleged retaliatory response -- we will go ahead and assume that the plaintiffs' petitioning and speech were constitutionally protected. That takes us to the retaliation piece and, like we said, plaintiffs don't get far. The claim that Bernardo and the Water District's opposition to the Pine Hill project was a retaliatory response to the plaintiffs submitting for approval, and advocating on behalf of, the Pine Hill project is not plausible on its face.[10]

Plaintiffs point to Bernardo's "fabricated, false, inflammatory, and baseless statements" that the Pine Hill project would contaminate the Town's water supply potentially leading to

---

[10] To this court, plaintiffs focus on the Pine Hill project but make one quick reference to the Orchard Estates project. They cite, as an example of retaliatory behavior, the "financially onerous design and construction requirements" that were imposed in connection with that project, presumably referring to the looping of the water line and the attendant delay. To the extent this argument is developed enough to be preserved, plaintiffs have not plausibly alleged that the looping requirement was not justified and was imposed as pay back. The fact that Bernardo's initial focus, in suggesting the line be looped, was related to water pressure, and that he later cited "water quality" as a concern, does not nudge this claim from possible to plausible. And for reasons we will get into, Bernardo had his own First Amendment rights.

increased nitrate levels and causing infants to develop Blue Baby Syndrome. However, there is no indication in the record, other than plaintiffs' say-so, that Bernardo's concerns about the project's impact on water were not genuinely held.[11]

Bernardo continually voiced the same worry about the project's impact on the water supply, both before various boards and in the motion to rescind or modify the Pine Hill project. It was a concern that, according to the Board of Health meeting minutes plaintiffs provided, members of the board shared even

_____

[11] Plaintiffs suggest that newly discovered evidence, which they submitted to the district court via a supplemental memorandum of law in support of the motion to amend the amended complaint, shows that Bernardo's concerns about nitrate levels were fiction. We are not persuaded. The Seekonk Water District's 2014 Consumer Confidence Report, which showed that the nitrate level in the Town's water was within normal limits, came out at least a year and a half or so after Bernardo initially raised concerns and, even so, does not mean that his concern about the Pine Hill project potentially increasing this number was frivolous. The June 2004 Massachusetts Department of Environmental Protection ("MADEP") report, which plaintiffs cite to show that MADEP was concerned that all Town wells were susceptible to contamination, is even less helpful. It was penned eight years before Bernardo raised his concerns, and we fail to see why, as plaintiffs suggest, this means that the defendants' specific concerns about the nitrate level around GP-4 were false. The random couple of emails plaintiffs produced are similarly not supportive. Bernardo asked in one email what ways the Water District might be able to stop the Pine Hill project. This is fully consistent with his oft repeated goal of preventing the project from going forward. As for the second email, we can hardly make the leap that plaintiffs would have us make, which is that the email, in which Bernardo agreed that for political reasons Town residents did not need to know how old the drinking water was, means that he "had no actual concern for public health related to the quality of the water supply." These supplemental filings do not edge the plaintiffs' claims out of the realm of possible into plausible.

before Bernardo made his pitch.  The minutes also reflect that the septic system at the nearby middle school had been monitored since 1995 and Bernardo arrived with graphs in hand showing variable and sometimes excessive nitrate levels in the area.

At the Planning Board meeting, Bernardo repeated more of the same but took things a step further, noting the correlation between increased nitrate levels and Blue Baby Syndrome.  Though plaintiffs call such a claim baseless and inflammatory, as the district court found -- properly taking judicial notice of this fact[12] -- the United States Environmental Protection Agency has explained: "Infants who drink water too high in nitrates can become seriously ill and even die.  Symptoms include shortness of breath and blue-tinted skin, a condition known as blue baby syndrome." https://www.epa.gov/nutrientpollution/effects-human-health (last visited on Apr. 27, 2016).  And the additional supposedly groundless concern raised by Bernardo, that the potential clean-up costs of any contamination would be high, was supported by the Water District's treasurer (he was a certified public accountant too) who spoke at the meeting.

---

[12] See R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006) (explaining that in connection with a motion for judgment on the pleadings, "[t]he court may supplement the facts contained in the pleadings by considering . . . facts susceptible to judicial notice").

Indeed, though the Planning Board ultimately allowed the Pine Hill project to go forward, bucking Bernardo's clear preference otherwise, there evidently was some level of agreement with Bernardo that there was cause for concern. Plaintiffs were required to both reduce the number of lots and to install five specially designed septic systems in the future residential lots closest to the GP-4 well.

All of this is to say that Bernardo had a duty, as the Water District's superintendent, to raise objections he deemed valid and it is hard to find any allegations in the complaint that Bernardo was doing anything more than fulfilling this duty. No doubt the parties disagreed on the potential impact the Pine Hill project would have on the Town's water, but the plaintiffs' allegation that Bernardo's concerns were imagined and raised simply to get even with plaintiffs is "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).[13]

There is another wrinkle. Like we said, in the First Amendment free speech context, issues of public concern are those

---

[13] Plaintiffs also allege in the complaint that the defendants "intentionally and unreasonably delayed" acting on Najas's application to connect Pine Hill to the Town's public water supply infrastructure. They say no more than this. When an allegation is so threadbare that it omits any meaningful content, we treat it as a naked conclusion. A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013). That is the case here.

"fairly considered as relating to any matter of political, social, or other concern to the community." Levinsky's, Inc., 127 F.3d at 132. There is little doubt that speech regarding a development's impact on the public water supply and, by extension, its impact on resident health, touches on matters of public concern. And, as superintendent of the Water District, Bernardo was charged with maintaining safe drinking water for the Town's residents. As this court has explained, "[n]ot only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concern." Goldstein, 719 F.3d at 30. For this reason, courts are not typically receptive to retaliation claims arising out of government speech. Id. This case certainly does not persuade us to deviate from this trend.

Plaintiffs have failed to plead a plausible unconstitutional retaliation claim. We move on to their equal protection offering.

**B. Equal Protection Claim**

Citing the same facts that support the retaliation claim, plaintiffs charge the defendants with violating their equal protection rights. They advance a class of one theory, which means that the aggrieved parties were singled out for reasons unique to them, not because of their membership in a particular group. Snyder v. Gaudet, 756 F.3d 30, 34 (1st Cir. 2014). To prevail, plaintiffs would need to show that Bernardo and the Water District intentionally treated them differently from others

similarly situated and there was no rational basis for this disparate treatment. Id. Based on how the plaintiffs have pled the claim, they would also need to show that the differential treatment "was motivated by 'bad faith or malicious intent to injure.'" Id. (citing Rubinovitz v. Rogato, 60 F.3d 906, 911 (1st Cir. 1995)).

We have no trouble concluding that the complaint fails to allege a plausible equal protection claim. The two equal protection counts (state and federal) simply rehash the plaintiffs' retaliation claims, relying on the same operative facts with a couple of buzzwords like "disparate" and "unprecedented" thrown in to describe the defendants' conduct. Nothing more is given. This is not sufficient. See Rosaura Bldg. Corp. v. Municipality of Mayaguez, 778 F.3d 55, 68 (1st Cir. 2015) (finding that simply rehashing a First Amendment retaliation claim is not sufficient to make out a valid equal protection claim).

Plaintiffs do not even attempt to allege the existence of any similarly situated comparators, and as our analysis in the previous section likely makes clear, they fail to state a plausible claim that bad faith or malice were the driving factors behind Bernardo and the Water District's opposition to the Pine Hill project. "[O]nly in extreme circumstances will a land-use dispute give rise to an equal protection claim." Torromeo v. Town of Fremont, 438

F.3d 113, 118 (1st Cir. 2006) (citation omitted).  This is not one of those circumstances.

The plaintiffs make a last ditch effort to get around these deficiencies by arguing that even assuming they needed to identify comparators at the pleadings stage, the proposed second amended complaint did just that and, as a result, the district court should have granted their motion to amend.  Employing the abuse of discretion standard the denial of a motion to amend warrants, and deferring to the district court's hands-on judgment as we must, we conclude that the court had sufficient reason to deny the request. Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 58 (1st Cir. 2006).

Though the proposed second amended complaint identified ten subdivisions or land use projects that had been built in the Town, which the Water District and/or Bernardo had reviewed the plans for, it in no way explained how the projects were similarly situated, for example, where they were located, when they were built, whether they were built on environmentally sensitive sites, or their proximity to GP-4 or other Town water sources.  This does not cut it, even at the pleading stage.[14]  See, e.g., Freeman v.

---

[14] Because plaintiffs fail to set forth a believable bad faith or malice claim, their argument that the degree of similarity between comparators should be relaxed, relying on Cordi-Allen v. Conlon, 494 F.3d 245, 251 n.4 (1st Cir. 2007), is unavailing. Even so, their claim would fail the more relaxed standard.

Town of Hudson, 714 F.3d 29, 39-40 (1st Cir. 2013) (concluding that the complaint's "failure to do more than conclusorily state that the [plaintiffs] were both similarly situated to and treated differently from unspecified 'other contractors' is insufficient to survive the defendants' motion to dismiss"). On top of this, the proffered additions to the complaint did not address the complaint's other infirmity, the absence of a believable bad faith or malice claim. Given these shortcomings, allowing the plaintiffs to amend the complaint would have been, as the district court found, pointless. If a proffered amendment would be an exercise in futility, the district court does not need to allow it. Aponte-Torres, 445 F.3d at 58. We find no abuse of discretion.

In sum, plaintiffs' equal protection claim fails as pled, and the district court correctly precluded plaintiffs from augmenting it. The next claim fares no better.

## C. Substantive Due Process Claim

Plaintiffs, again pointing to the defendants' opposition to Pine Hill and the requirements imposed on their development projects, allege that their substantive due process rights were violated. In order to assert a viable substantive due process claim, a plaintiff has "to prove that they suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks

- 21 -

the conscience." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008) (emphasis in original). We conclude, without serious question, that plaintiffs fall short.

For starters, we are unclear as to what deprivation plaintiffs contend they have suffered. Oddly they claim to have been deprived of life and liberty in their brief. Property appears a better fit but even that does not seem quite right. Plaintiffs did not lose out on any land and were not precluded from developing. Both Pine Hill and Orchard Estates went forward as planned, albeit with some requirements plaintiffs are not happy with. In any event, even assuming they have alleged a valid deprivation, plaintiffs have not plausibly alleged conscience-shocking government behavior.

In the context of land use disputes, "[s]ubstantive due process is a constitutional cause of action that leaves the door 'slightly ajar for federal relief in truly horrendous situations.'" Id. (quoting Néstor Colón–Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992)). It is not a doctrine to be invoked to challenge discretionary determinations of local decision makers. Id. Despite all of plaintiffs' protestations otherwise, this matter is far more akin to a run-of-the-mill land use case than an abhorrent scenario. At most, plaintiffs have plausibly alleged that Bernardo and the Water District were doggedly persistent in their belief that the Pine Hill project would harm that Town's water, a concern that does not

- 22 -

(according to the record) appear baseless, and is one that Bernardo was obligated to explore. This is hardly the "brutal, demeaning, and harmful" stuff that makes a substantive due process claim. Elena, 677 F.3d at 7.

No more need be said. Plaintiffs have not alleged a plausible-on-its-face substantive due process claim.[15]

### D. Tortious Business Interference Claim

The plaintiffs included a claim against Bernardo individually for intentional interference with business expectation, opportunity, and advantage. In it they called Bernardo's "actions, statements, and publications" regarding the Pine Hill project a direct attempt to interfere with their business relations, alleging the actions were malicious and in retaliation for the plaintiffs outbidding the Water District for the Property and seeking to develop it.

But, according to Massachusetts common law, "a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption." Nelson v. Salem State Coll., 845 N.E.2d 338, 348 (Mass. 2006). The rule is "that [t]here is every presumption in

---

[15] Since we have found no merit to any of plaintiffs' constitutional claims, we do not need to address Bernardo's contention that he is entitled to qualified immunity from suits filed pursuant to § 1983 and the MCRA.

- 23 -

favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare." S. Boston Betterment Trust Corp. v. Boston Redevelopment Auth., 777 N.E.2d 812, 820 (Mass. 2002) (alteration in original).

Defendants argue that Bernardo is entitled to this immunity. We agree. For the reasons set forth above, which we see no reason to rehash, the complaint failed to state a plausible claim that bad faith or malice, as opposed to a concern for the Town's residents' general welfare, motivated Bernardo's behavior. Plaintiffs' conclusory allegations otherwise are not enough. With Bernardo entitled to immunity on this state law claim, the court properly dismissed it.

## V. CONCLUSION

What the plaintiffs needed to give were sufficient facts to state plausible-on-their-face claims, ones that gave "rise to more than a mere possibility of liability." Grajales, 682 F.3d at 44-45. That is not what we got. The district court's dismissal of each of the subject claims was warranted.

Affirmed.