# United States Court of Appeals
## For the First Circuit

No. 15-1384

ROBERT S. SNYDER,

Plaintiff, Appellant,

v.

SERAFINA COLLURA; RALPH GAUDET; PATRICK POWELL; CITY OF WALTHAM;

Defendants, Appellees,

JEANNETTE A. MCCARTHY; BERNADETTE D. SEWELL;

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Zaheer A. Samee, with whom Leonard A. Frisoli and Frisoli Associates, P.C., were on brief, for appellant.
Thomas R. Donohue, with whom Deidre Brennan Regan and Brody, Hardoon, Perkins & Kesten, LLP, were on brief, for appellee Serafina Collura.
Bernadette Dunn Sewell, Assistant City Solicitor, City of Waltham Law Department, for appellees Ralph Gaudet and Patrick Powell.
Michelle Learned, Assistant City Solicitor, City of Waltham Law Department, for appellee City of Waltham.

January 27, 2016

**KAYATTA**, **Circuit Judge**.  In 2009, Robert Snyder sued the City of Waltham, Massachusetts, ("Waltham") and several of its officials alleging that their vindictive application of a local zoning board's authority violated state law as well as the United States and Massachusetts Constitutions.  This opinion marks our second encounter with Snyder's claims.  In 2014 we ruled, on interlocutory appeal, that two individual defendants were immune to suit under 42 U.S.C. § 1983 because Snyder's Equal Protection claim--the "only preserved federal claim" in the case --failed because Snyder did not show that the defendants had treated him differently than any other similarly-situated individual.  Snyder v. Gaudet, 756 F.3d 30, 34–36 (1st Cir. 2014) ("Snyder I").  In this opinion, we now affirm the district court's dismissal of Snyder's remaining claims and its rejection of his belated and likely insufficient effort to assert new theories of recovery.

## I.   BACKGROUND

Snyder's case has its genesis in his decision to terminate the employment by his company of then-City Councilor Serafina Collura, who then turned into an avenging whistle-blower, goading Waltham to pursue an apparent zoning violation by Snyder. Id. at 32-33.  Further discussion of the facts can be found in our earlier case.  Id.

Snyder's original complaint, filed in December 2009 and still operative, named five counts. Count one alleged that the defendants conspired to deprive Snyder of his Constitutional rights. 42 U.S.C. §§ 1983, 1985, 1986. It stated that Snyder's right to substantive due process and equal protection of law under the Fourteenth Amendment were "[a]mong" the rights grounding his section 1983 count, but that it was "not limited to" these particular rights. Counts two through four alleged various violations of Massachusetts state law, naming abuse of process, malicious prosecution, and civil conspiracy. Snyder's fifth count invoked the Massachusetts Civil Rights Act ("MCRA") to redress alleged violations of his "state and federal constitutional rights and liberties." Pursuant to Federal Rule of Civil Procedure 16(b), the district court set a deadline of December 31, 2010 for any amendments to the pleadings.

All defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b). They asserted that Snyder's "§ 1983 claims must be dismissed against Defendants because [Snyder's] complaint alleges no facts detailing the sine qua non of a § 1983 action: the violation of a federal right." In support of that assertion, they directed their argument to the two federal rights expressly identified in the complaint: substantive due process and equal protection of the law.

The filing of the motion to dismiss called upon the court to determine whether the facts alleged in the complaint "allow[] the court to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). The filing of that motion also provided Snyder with an opportunity to do what his complaint need not have done: explain his position on why the alleged facts supported a finding of liability under the law. Failure to oppose the motion or to advance an argument in support of such a finding may well have constituted a waiver of the argument if the district court had granted the motion and Snyder then appealed. See, e.g., Butler v. Deutsche Bank Tr. Co. Ams., 748 F.3d 28, 36 (1st Cir. 2014) (court may find argument waived when "the argument [the plaintiff] presented in his memorandum in opposition to the motion to dismiss did not focus on the [argument]").

Snyder did oppose the motion to dismiss. In so doing, he stated: "This case is about the gross abuse of power . . . to injure and harass [the plaintiff] in violation of his constitutional rights to equal protection of the laws, freedom from arbitrary searches and seizures, and substantive due process." This opposition, as spelled out in Snyder's supporting memorandum describing how these listed federal rights were violated, succeeded in obtaining a denial of the motion to dismiss.

- 5 -

And in its denial of Waltham's motion to dismiss Snyder's section 1983 count, the district court characterized the claim as one "for denial of substantive due process and equal protection."

After discovery, Waltham, joined by the other named defendants, moved for summary judgment on "all of the plaintiff's claims." Snyder opposed that motion, relying on his contention that the defendants conspired "to abuse and harass the plaintiff in violation of his rights to substantive due process and equal protection." The district court's rejection of the immunity defenses of two municipal officials in ruling on this motion then became the subject of last year's interlocutory appeal by two municipal officials. Snyder I, 756 F.3d at 31-32.

In that appeal, for the first time, Snyder articulated his desire to assert an Eighth Amendment theory in support of his section 1983 claim, relying on the Amendment's Excessive Fines Clause. U.S. Const. amend. VIII, cl. 2. We found the claim to be not "preserved" because Snyder "never presented [it] to the district court." Snyder I, 756 F.3d at 34. Our opinion further explained why Snyder's Equal Protection claim failed to offer a path past the defendants' qualified immunity. Id. at 33-36. Snyder's state law claims were not directly at issue in the earlier appeal. Id. at 34 n.2.

After our decision, in the district court, all defendants renewed their motions for summary judgment on the

balance of Snyder's complaint.  In response, Snyder abandoned as against all defendants any argument that they violated his right to equal protection or substantive due process.  Instead, in an attempt to refresh his case, he contended that the facts in his complaint supported two other theories of section 1983 liability that had not yet been addressed by any ruling.  First, he argued that his complaint both originally and as proposed to be amended adequately makes out a First Amendment claim that City officials "conspired and retaliated against Snyder" as a consequence of (i) his statements to a state unemployment agency regarding Collura's performance as an employee and (ii) his decision to sue Collura's brother based on an unrelated matter in small claims court.  Second, Snyder argued that his complaint, both originally and as proposed to be amended, adequately makes out a claim that certain fines the zoning authority sought to collect from him were not only improperly motivated but were "excessive" under the Eighth Amendment.  As a back-up, Snyder also moved for leave to amend his complaint to add conclusory assertions that would make express the First and Eighth Amendment claims that Snyder contends are implied by the factual averments already contained in the complaint.

        The district court denied without elaboration Snyder's motion to amend as "futile".  Snyder v. Collura, No. 09-CV-12055-RWZ, 2015 WL 758546, at *1 n.1 (D. Mass. Feb. 20, 2015) (hereinafter, "Snyder II").  It then granted the defendants' motion

for summary judgment on the remaining claims, effectively treating Snyder's effort to assert new theories in support of his federal claims as inadequate.  Id. at *2.

## II.  ANALYSIS

We review a district court's grant of summary judgment de novo.  Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015). The moving party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## A.    Count One: The Section 1983 Claim

Snyder's first argument is that the district court erred in failing to construe the section 1983 claim in his complaint as raising two theories of constitutional violation not addressed on the merits by our prior opinion in this case:  a violation of his First Amendment rights and a violation of his Eighth Amendment right to be free of excessive fines.

Recognizing that a complaint need plead facts and not necessarily the specific names of the legal theories and causes of action fairly raised by these facts, Morales-Vallellanes v. Potter, 339 F.3d 9, 14 (1st Cir. 2003), we nevertheless find in Snyder's complaint barely a hint of any facts that might support such theories.  The complaint contains no allegation that the municipal officials retaliated against Snyder because he supplied information to a state tribunal.  While it mentions that a state

- 8 -

tribunal requested information from Snyder, and denied Collura benefits, it does not even allege that Collura knew what information he supplied to the tribunal. It also expressly alleges that the retaliatory campaign began before the state agency requested any information. Leaving no room for doubt as to the motive for the alleged retaliation, the complaint expressly alleges that the acts of which it complains were "[in] retaliation for [Collura's] termination of employment." As for the lawsuit against Collura's brother, the complaint does allege that Waltham issued a notice of fine on "the very same day" that Snyder prevailed in a lawsuit against Collura's brother, but makes no allegation that the latter preceded the former, or was a reason for the notice. Finally, as for the Eighth Amendment claim, the complaint mentions "notice" of a "$300" fine for each day a zoning violation was not abated, but offers no facts suggesting how such a fine was excessive, or was either paid or still threatened. See United States v. Bajakajian, 524 U.S. 321, 337 (1998) (gravamen of Eighth Amendment excessive fines inquiry is whether "the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense").

Even if we were to assume that such vague hints of a claim were enough to survive a motion to dismiss, the motion to dismiss stage in this lawsuit has long passed. Snyder has not done what he needed to do to develop and preserve such arguably

latent claims. In our prior opinion, we noted that Snyder had not "preserved" his Eighth Amendment theory. While that holding might be read narrowly as limited to the immunity issues on interlocutory review, or as not preclusive of subsequent efforts to revive such a claim, we make clear now that, to the extent one might arguably glean these claims from the spare hints in the complaint, Snyder waited too long to undertake such a recasting of his lawsuit. See Schneider v. Local 103 I.B.E.W. Health Plan, 442 F.3d 1, 3 (1st Cir. 2006) (per curiam) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived." (citing Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995))); Torres-Rios v. LPS Labs., Inc., 152 F.3d 11, 16 (1st Cir. 1998) (mere "hint of a possible additional claim" insufficient "[g]iven the absence of any development of such a claim" as the suit progressed).

The defendants filed a motion to dismiss the section 1983 claim in whole, and they then later moved for summary judgment after discovery. Unlike Federal Rule of Civil Procedure 8, motions of this type necessarily call on a plaintiff to tie his allegations to a tangible theory of recovery. Otherwise, waiver looms. See Grenier, 70 F.3d at 678; Johnston v. Holiday Inns, Inc., 595 F.2d 890, 894 (1st Cir. 1979) ("It is by now axiomatic that an issue not presented to the trial court cannot be raised for the first time on appeal."). In response first to the motion to dismiss and

then in response to the original motions for summary judgment, Snyder omitted any mention of the theories that he now urges we find implicit in the complaint. In short, to the extent that the complaint left Snyder leeway in picking his legal theories, the point at which he needed to reveal those theories passed well before he announced the theories that he now wishes to pursue. See Torres-Rios, 152 F.3d at 16 ("Given the absence of any development of such a claim by the time of the Joint Case Management Memorandum, we join the district court in concluding that a design defect claim was not raised by the complaint.") To rule otherwise would be to turn an orderly marshalling of the reasons for and against dismissal of a claim into a game of whack-a-mole, with seriatim summary judgment proceedings not ending until the defendant manages to guess every possible legal theory upon which a plaintiff might rely to support a claim.

That leaves Snyder's appeal from his request for leave to amend the complaint. The proposed amendment did not contain new facts. Rather, it simply served as an alternative vehicle arguing that he should be able to recast his claims at what would otherwise be the end of the case. The district court rejected the effort on the grounds that it was futile. Snyder II, 2015 WL 758546, at *1 n.1. For all the reasons we have already stated, we agree. We add only that once a court sets a deadline for seeking

- 11 -

leave to amend,[1] the complaint may be modified "only for good cause." Martinez, 792 F.3d at 180 (citing Fed. R. Civ. P. 16(b)(4)). And "'[g]ood cause' does not typically include a change of heart on a litigation strategy." Id.; see also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir. 2008) (a party is "bound by the consequences of its litigation strategy" and leave is properly denied when it delays moving to amend because it "thought that it would prevail on the motion to dismiss without any need to further amend").

## B.    Counts Two through Five: The State Law Claims

While Snyder rests the bulk of his argument on the viability of his revised federal theories, his state law claims were also a victim of the defendants' renewed summary judgment motion. Snyder II, 2015 WL 758546 at *1-2. Snyder does not contest the entry of summary judgment on his abuse of process and malicious prosecution claims, but he does argue that the district court erred in granting the defendants' motion with respect to his civil conspiracy claim and his claim under the Massachusetts Civil Rights Act. We therefore address these arguments in turn.

---

[1] According to the district court's scheduling order, amended pleadings were due in this case by December 31, 2010. Snyder moved for leave to make the amendment at issue almost four years later on December 3, 2014.

- 12 -

### 1.   Civil Conspiracy Claim

The district court found that Snyder's civil conspiracy count failed as a matter of law because "[a] claim for civil conspiracy requires a showing of an underlying tortious act," which Snyder had failed to make.  Id. at *2 (citing Garvin v. Hampden Cnty. Sheriff's Dep't, No. 3:05-CV-30102-MAP, 2008 WL 877797, at *8 (D. Mass. Mar. 27, 2008)).  Although this is an incomplete statement of the law, the district court's resolution of the case is unaffected.

"Massachusetts recognizes two types of civil conspiracy."  Taylor v. Am. Chemistry Council, 576 F.3d 16, 34 (1st Cir. 2009).  One, "based on section 876 of the Restatement [(Second) of Torts], is a form of vicarious liability for the tortious conduct of others."  Id.  The plaintiff is thus required to prove an underlying tort.  Id. at 35.  The other, drawn from the common law, amounts to "a very limited cause of action in Massachusetts" for civil conspiracy based on the defendants' allegedly unique ability to exert a "'peculiar power of coercion'" when acting in unison.  Jurgens v. Abraham, 616 F. Supp. 1381, 1386 (D. Mass. 1985) (quoting Fleming v. Dane, 22 N.E.2d 609, 611 (Mass. 1939)).  Under the latter theory, the "wrong" suffered by the plaintiff is "in the particular combination of the defendants rather than in the tortious nature of the underlying conduct."  Kurker v. Hill, 689 N.E.2d 833, 836 (Mass. App. Ct. 1998).

- 13 -

Collusive behavior among market competitors is a good example of one of those rare instances in which it is the act of agreeing that constitutes the wrong. See, e.g., Neustadt v. Emp'rs Liab. Assurance Corp., 21 N.E.2d 538, 539-41 (Mass. 1939) (discussing nature of such a conspiracy in the context of claim that insurers "unlawfully combined with each other").

From the complaint through the 2014 appeal and on into the second round of summary judgment, Snyder has consistently and squarely cast his case as being of the first type, which does require proof of an underlying tort. Snyder alleged, for example, that the defendants "conspired to retaliate against Snyder and deny him equal protection of the laws," and that they were engaged in a "civil conspiracy to commit tortious conduct." Snyder has thus waived the opportunity to assert the second type of conspiracy by eschewing such an argument until the instant appeal. See Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994) (finding the question waived when "[d]espite the fact that the pleading was sufficient to state a claim of ['coercive'] civil conspiracy, . . . Count X was tried and the jury was ultimately instructed on a . . . quite different 'civil conspiracy' cause of action"). And because, as explained in this opinion, he has no underlying tort, his conspiracy claim fails.

### 2.    MCRA Claim

On the last page and one-half of his complaint, Snyder asserted a claim under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H, 11I.  This claim incorporated all of the allegations and theories of liability asserted in the federal claims.  They make no reference to any theory of liability based on notions of either free speech or excessive fines.  Nor do they add any factual allegations that might point to or support any such theories of liability.  Specifically, there is no allegation that would suggest that any fine imposed was excessive, nor is there any allegation that the retaliatory campaign alleged was based on anything other than Collura's firing.  Finally, Snyder raised no such theories in opposing the motion to dismiss, nor did he otherwise raise them in response to the original motion for summary judgment until after discovery closed.  Accordingly, for the same reasons that we affirm the dismissal of the federal claims, we reject as well Snyder's effort to assert state law versions of those same claims.  And the same logic leads us to reject Snyder's late attempt to assert two other state-law rights: the right to "impartial interpretation of the laws," Mass. Const. pt. 1, Art. XXIX, and the right to "access the courts," id. Amend. XLVIII, pt. 2, § 2 ¶ 3.

Snyder's complaint did, however, fairly raise one state law theory of liability not incorporated in the section 1983 count.

His complaint asserts that the conduct of the defendants as described in the complaint violated a state law right "to own land and use and enjoy it for his comfort and profit without harassment and unlawful interference." Apart from its cameo role in the complaint, this theory was never again discussed by Snyder beyond brief references in his briefs submitted to us now and in his opposition to the renewed motion for summary judgment.

In support of this claim on appeal, Snyder does no more than point, in passing, to a Massachusetts case holding that the plaintiffs stated an MCRA claim by alleging that a neighborhood group's threatening and aggressive opposition to the construction of a tennis court, when the proposed construction violated no zoning law, impinged upon the plaintiffs' constitutionally-secure property rights. Bell v. Mazza, 474 N.E.2d 1111 (Mass. 1985); see also Ayasli v. Armstrong, 780 N.E.2d 926, 941 (Mass. App. Ct. 2002) (Rapoza, J., dissenting) (noting that in Bell, "the plaintiffs complied with all relevant regulations and were without fault in the development of their land." (citing Bell v. Zoning Bd. of Appeals of Cohasset, 437 N.E.2d 532 (Mass. App. Ct. 1982))). While we are skeptical that Snyder's complaint could fairly be read to state such a claim,[2] Snyder's wholly inadequate briefing on this point precludes our review of its merits.

_____

[2] In Bell, the Supreme Judicial Court was clear that MCRA liability did not attend the "pursuit of legal rights" absent

- 16 -

It is a "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). As we have noted, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." Id. "This rule is commonly deployed . . . against ancillary arguments tossed carelessly against the wall in the hope that one might stick." United States v. Zayas-Ortiz, 808 F.3d 520, 524 n.1 (1st Cir. 2015). Through perfunctory briefing, Snyder has waived this arm of his complaint.

### III. CONCLUSION

Snyder is correct that the facts of this case reflect poorly on Collura and Waltham. Collura was apparently perfectly happy to remain silent about Snyder's apparent zoning violations so long as it suited her personal interest, and then, when her interests changed, used her influence to ensure that the Town enforced its ordinances against Snyder as if it were suddenly one of the more important topics on the City's agenda. Nevertheless, as we previously explained in our prior opinion in this case, an

---

"extraordinary circumstances." Bell, 474 N.E.2d at 1115. Our ruling in Snyder I precludes Snyder from claiming now that Waltham could not rationally have viewed him at fault under the zoning laws. Snyder I, 756 F.3d at 35–36.

- 17 -

attempt to enforce a zoning law in the face of an apparent violation does not violate the equal protection clause of the U.S. Constitution absent evidence that other similarly situated individuals were treated differently.  See Snyder I, 756 F.3d at 36.  And because Snyder's subsequent efforts to find another legal basis for striking back either fall short of the mark, or come too late, we must affirm the entry of summary judgment on all of Snyder's claims and the denial of his motion for leave to amend.