# United States Court of Appeals
## For the First Circuit

No. 23-1354

3137, LLC; 541 MAIN STREET REALTY TRUST;
EMBER PIZZA, INC.; THE PORT RESTAURANT AND BAR, INC.;
JUSTIN R. BRACKETT; JARED G. BRACKETT,

Plaintiffs, Appellants,

v.

TOWN OF HARWICH; JOSEPH F. POWERS; DAVID J. GUILLEMETTE;
KEVIN M. CONSIDINE; LARRY G. BALLANTINE; DONALD F. HOWELL;
MICHAEL D. MACASKILL; EDWARD J. MCMANUS; GAIL O. SLUIS;
PATRICIA A. O'NEILL,

Defendants, Appellees,

STEPHEN P. FORD; JOHN AND/OR JANE DOES 1-10,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Barron, Chief Judge,
Kayatta and Gelpí, Circuit Judges.

Raymond H. Tomlinson, Jr. for appellants.

Dana A. Curhan for appellee Patricia A. O'Neill.

Charles M. Sabatt for appellee Gail O. Sluis.

Justin L. Amos, with whom John J. Davis and Pierce Davis & Perritano LLP were on brief, for appellees Larry G. Ballantine, Kevin M. Considine, David J. Guillemette, Town of Harwich, Donald F. Howell, Michael D. MacAskill, Edward J. McManus, and Joseph F. Powers.

January 13, 2025

**GELPÍ, Circuit Judge.** Justin and Jared Brackett own and operate two restaurants in the Town of Harwich, Massachusetts ("Harwich"): Ember Pizza, Inc. ("Ember") and The Port Restaurant and Bar, Inc. ("The Port") (collectively, "Plaintiffs-Appellants" or "Ember and The Port"). Ember and The Port held liquor and entertainment licenses issued by Harwich. But they allegedly committed a series of violations of Harwich's noise ordinance and Massachusetts COVID-19 restrictions, resulting in suspensions of and restrictions on their permits. In response to these suspensions, Ember and The Port sued Harwich, multiple Harwich officials, and other individuals in federal district court. In their amended complaint (hereinafter, the "complaint"), Ember and The Port asserted various federal and state claims. The defendants filed several dispositive motions, which the district court largely granted. When all was said and done, Ember and The Port's claims had all been rejected, and having found that an amendment would be futile, the district court denied Ember and The Port's request for leave to amend their complaint. This appeal followed. We affirm.

## I. BACKGROUND

Because this appeal follows the district court's judgment under Federal Rule of Civil Procedure 12(b)(6) and (c), we accept as true the well-pleaded allegations from Ember and The Port's complaint. Legal Sea Foods, LLC v. Strathmore Ins. Co., 36

F.4th 29, 34 (1st Cir. 2022) (quoting Alston v. Spiegel, 988 F.3d 564, 571 (1st Cir. 2021)).

## A. Factual Background

Ember and The Port are restaurants located in Harwich; both restaurants are owned by Jared and Justin Brackett. The Harwich Board of Selectmen (the "Board") granted liquor licenses to the restaurants annually, or seasonally. The Board also issued Ember and The Port entertainment licenses, which permitted the restaurants to play amplified or acoustic music indoors and outdoors.

Even with the entertainment licenses, however, Ember and The Port still had to comply with the Harwich Noise Ordinance (the "Ordinance"). The Ordinance regulates sound and noise volume in the Town. It provides, in relevant part, that "[i]t shall be unlawful for any person or persons to cause or allow any noise which emanates from any building, boat, structure, vehicle, premises, or any sound amplification system, which is plainly audible at a distance of 150 feet from any such building, boat, structure, vehicle, premises or sound amplification system." The Ordinance further provides that plainly audible noise "constitute[s] prima facie evidence of a violation," defining "plainly audible" as "[a]ny sound from a source regulated by this bylaw that can be detected above routine or normal ambient background noise by unaided human hearing."

- 4 -

In September 2019, Harwich found that multiple noise complaints made against Ember showed a violation of the Ordinance. The next month, the Board voted to suspend Ember's entertainment license in its entirety for two days and to restrict the license to acoustic-only performances for five days.

However, due to the pandemic, Ember did not serve at least some of this suspension. In the intervening period, it was also accused of some "additional violations" of the Ordinance. Thus, on August 3, 2020, the Board voted to rescind its prior suspensions and, instead, impose a seven-day suspension of Ember's entertainment license. Ember and The Port allege that false noise complaints were lodged against them, and that Harwich selectively enforced the Ordinance. Ember and The Port further assert that other licensees -- including competitor restaurants -- engaged in "open and obvious violations," without experiencing disciplinary action from Harwich.

Along with their alleged Ordinance violations, Ember and The Port were charged with violating Massachusetts COVID-19 restrictions. Massachusetts' 2020, pandemic-era guidelines allowed restaurants to remain open only for takeout food and alcohol sales. On May 28, 2020, the Harwich Police Deputy Chief referred to Harwich several alleged violations of the COVID-19 guidance by The Port and Ember. As with the Ordinance, Ember and

The Port allege that the COVID-19 restrictions were selectively enforced against them.

In November 2020, Ember and The Port applied to the Board for renewal of their entertainment license. Having approved other restaurants' entertainment licenses months prior, the Board eventually renewed Ember's liquor and entertainment licenses on April 26, 2021, but imposed an acoustic-only restriction on the entertainment license. The day after the renewal of Ember's licenses, the Board revoked The Port's expanded outdoor dining permit. Moreover, a few weeks later, on May 10, 2021, the Board re-imposed the acoustic-only restriction on The Port. And the Board did not renew The Port's liquor license until May 12, 2021, when it also suspended that license for three days as discipline for the COVID-19 violations.

Ember and The Port filed multiple lawsuits in state court along with an appeal to Massachusetts' Alcoholic Beverages Control Commission.

### B. Procedural History

On March 19, 2021, Ember and The Port sued several defendants in the District of Massachusetts. Two months later, they filed an amended complaint (the "complaint"), which forms the basis for the present dispute. The complaint named as defendants: Harwich; Board members Larry G. Ballantine ("Ballantine"), Donald F. Howell ("Howell"), Michael D. MacAskill ("MacAskill"), Edward

J. McManus ("McManus"), and Stephen P. Ford ("Ford") in their individual capacities; and two individuals, Gail O. Sluis ("Sluis") and Patricia A. O'Neill ("O'Neill"). The defendants also included a host of other Harwich officials, sued in their individual capacities.[1]

Ember and The Port's complaint alleged six counts: Count one alleged that the defendants, in their official capacities, conspired to deprive Ember and The Port of their constitutional rights. 42 U.S.C. §§ 1983, 1985. Count two invoked the Massachusetts Civil Rights Act ("MCRA"), alleging -- against the defendants individually -- denial of due process "by the application of vague and unclear standards." Counts three through six alleged various violations of common law and Massachusetts state law.

On September 29 and 30, 2021, the Harwich defendants and Sluis moved to dismiss; those motions were granted on January 28,

---

[1] The complaint also named as defendants "John and/or Jane Does 1-10" -- unidentified individuals who allegedly conspired with the named defendants to harm the plaintiffs. The district court dismissed the claims against the Does, holding that the complaint did not offer information on "a good-faith investigation . . . to reveal the identit[ies] of the" Does. 3137, LLC v. Town of Harwich, No. 21-cv-10473, 2022 WL 267435, at *10 n.12 (D. Mass. Jan. 28, 2022) (quoting Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 57 n.6 (1st Cir. 2013)). Neither party references, nor offers any argument as to, those individuals on appeal. Any claim against those individuals is, thus, waived. See Rodríguez-Reyes, 711 F.3d at 57-58 n.6 (quoting Martínez-Rivera v. Sánchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007)).

- 7 -

2022.  On March 28, 2022, Harwich and Sluis filed a motion for separate and final judgment and on March 31, 2022, O'Neill filed her notice of intent to file a motion for judgment on the pleadings.  On April 11, 2022, Ember and The Port cross-moved for relief from the district court's order granting the motions to dismiss and for leave to file another amended complaint.  On April 15, 2022, O'Neill filed her motion for judgment on the pleadings, and, in response, Ember and The Port cross-moved for leave to file an amended complaint.  On July 22, 2022, the district court denied the Harwich defendants and Sluis' motion for separate and final judgment and denied Ember and The Port's cross-motion for relief and for leave to amend.  On March 15, 2023, the district court granted O'Neill's motion for judgment on the pleadings, denied Ember and The Port's second cross-motion for leave to amend as futile, and rejected the complaint.  Ember and The Port timely appealed the district court's decisions rejecting their claims and denying their second cross-motion for leave to amend.

## II. DISCUSSION

Ember and The Port's arguments largely fall in two buckets.  First, they contend that the district court erred in determining that the complaint failed to state a claim that is plausible on its face.  Second, Ember and The Port argue that the district court erred in denying their request for leave to amend as futile.  We analyze each argument in turn, concluding that the

- 8 -

district court correctly rejected Ember and The Port's claims as well as correctly denied leave to amend.[2]

## A. Legal Standards

We "review the grant of a motion to dismiss de novo, accepting well-pled facts as true and drawing all inferences in favor of the non-moving party." Rivera-Rosario v. LSREF2 Island Holdings, Ltd., 79 F.4th 1, 4 (1st Cir. 2023) (quoting Triangle Cayman Asset Co. v. LG & AC, Corp., 52 F.4th 24, 32 (1st Cir. 2022)). "The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011) (citing Fed. R. Civ. P. 12(b)(6)). Moreover, "we may affirm the dismissal of a complaint on any basis available in the record." Sakab Saudi Holding Co. v. Aljabri, 58 F.4th 585, 594 (1st Cir. 2023) (internal quotation marks omitted) (quoting Yan v. ReWalk Robotics Ltd., 973 F.3d 22, 30 (1st Cir. 2020)). "The standard of review of a motion for judgment on the pleadings under [Rule] 12(c) is the same as that for a motion to

---

[2] We first discuss Ember and The Port's arguments on the rejection of the complaint and then their arguments on the denial of their request for leave to amend the complaint.

dismiss under Rule 12(b)(6)."  Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007) (citations omitted).

We follow a two-step approach in determining whether a claim for which relief can be granted has been established.  First, we "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández, 640 F.3d at 12).  Next, we "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  Id.  This is a "context-specific" approach that requires us "to draw on" our "judicial experience and common sense."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

How we review an appeal from a trial court's entry of judgment on the pleadings under Rule 12(c) is nearly identical to our Rule 12(b)(6) review.  We consider the decision de novo and ask "if the non-movant's factual allegations raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true."  Est. of Bennett v. Wainwright, 548 F.3d 155, 163 (1st Cir. 2008) (internal quotation marks and citation omitted).  The "modest difference" between the two is that a Rule 12(c) motion "implicates the pleadings as a

whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2004)).

## B. Constitutional Claims Under Section 1983

"Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law." Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011) (quoting Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev., 421 F.3d 1, 7 (1st Cir. 2005)). Plaintiffs must allege two "essential elements" for a § 1983 cause of action: "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." Finamore v. Miglionico, 15 F.4th 52, 58 (1st Cir. 2021) (quoting Chongris v. Bd. of Appeals of Andover, 811 F.2d 36, 40 (1st Cir. 1987)).

Ember and The Port bring their § 1983 claims against all defendants, including the individual defendants -- Sluis and O'Neill. Sluis and O'Neill are, without question, private parties. But the conduct of private parties can be "fairly attributable to the State" in certain circumstances. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005). Where "challenged conduct cannot be classified as state action, a section 1983 claim

- 11 -

necessarily fails."  Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 543 (1st Cir. 2021) (citing Santiago, 655 F.3d at 68). We have used three tests to determine whether a private party can be characterized as a state actor: "the public function test, the joint action/nexus test, [and] the state compulsion test." Alberto San, Inc. v. Consejo de Titulares del Condominio San Alberto, 522 F.3d 1, 4 (1st Cir. 2008) (citing Estades-Negroni, 412 F.3d at 5).

On appeal, Ember and The Port appear to rely on the public function test, arguing: "[t]he district court ignored that it is also sufficient to allege O'Neill's and Sluis' intent to influence state action, as their doing so seeks to supplant state conduct with their own . . . ."[3]  The public function test asks whether a private entity has exercised powers "traditionally exclusively reserved to the State."  Santiago, 655 F.3d at 69 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974)). The activities that fall under the umbrella of public function are "few and far between."  Id.

_____

[3] Ember and The Port's inartful pleading makes it difficult to discern whether they intend to rely on the public function test or, alternatively, on the joint action test.  The Plaintiffs-Appellants argued below that Sluis/O'Neill "conspired with state actors to deprive Plaintiffs of their civil rights."  If their intention was to make a joint action argument, it fails.  The facts, as alleged in the complaint, are insufficient to show joint action.  See Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980) ("[G]eneral allegations of cooperation between private individuals and unspecified government agencies do not . . . make out a claim of action taken under color of state law." (citing Grow v. Fisher, 523 F.2d 875, 878-79 (7th Cir. 1975))).

Here, Ember and The Port failed to allege facts that O'Neill and Sluis exercised powers traditionally reserved to the State. As to both Sluis and O'Neill, the complaint stated that they "engaged in ex-parte communications" with Harwich. Ember and The Port further contended that "internal, non-public Town memoranda and information" were released to O'Neill and Sluis. These alleged facts do not support a claim that Sluis and O'Neill sought to supplant state power with their own. The § 1983 claim was therefore properly rejected as to Sluis and O'Neill. We next rehearse why this claim also fails as to the Harwich defendants.[4]

### 1. First Amendment

Ember and The Port originally argued that the Ordinance was both impermissibly broad and vague, thus abridging their freedom of speech under the First Amendment.[5] However, in their reply brief, Ember and The Port abandon their facial and as applied First Amendment allegations. As they put it, "Plaintiffs no longer press their facial and as applied challenges to the Noise Bylaw." They made a similar concession at oral argument. We, therefore,

---

[4] It is unclear whether Ember and The Port continue to press their § 1985 claim. As they have not adequately briefed that claim on appeal, we deem it waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

[5] The First Amendment, applied to the states through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

deem as waived the First Amendment facial and as-applied challenges and need not further address them.  See United States v. Carter, 19 F.4th 520, 524 (1st Cir. 2021); United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) ("A party who identifies an issue, and then explicitly withdraws it, has waived the issue.").

Ember and The Port's only other argument under the First Amendment is that a series of the Board's decisions were a form of retaliation on account of their "outspoken and very public complaints of selective enforcement by municipal officials."  In support of this argument, Ember and The Port point to the acoustic-only music restriction and the delay in renewal of their licenses.  More specifically, they allege that appellees "undertook a malicious and orchestrated campaign to selectively target and retaliate against" them by "fabricating violations of the noise ordinance and COVID-19 restrictions."  In arguing that the district court improperly "ignored" their allegations of retaliatory conduct, Ember and The Port cite both Cosenza v. City of Worcester and Erickson v. Pardus.  These cases dealt with neither the First Amendment nor allegations of retaliation.  See generally Erickson v. Pardus, 551 U.S. 89 (2007); Cosenza v. City of Worcester, 355 F. Supp. 3d 81 (D. Mass. 2019).  "Judges are not mind-readers, so parties must spell out their issues clearly . . . analyzing on-point authority."  Rodríguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) (citations omitted).

- 14 -

Ember and The Port's inadequate briefing on this claim "precludes our review of its merits."  See Snyder v. Collura, 812 F.3d 46, 53-54 (1st Cir. 2016).

Additionally, and as the defendants point out, there was no retaliation claim in the complaint, "and such a claim was never argued in any of the relevant hearings in the District Court."  In fact, in response to the motion to dismiss, Ember and The Port did not mention a First Amendment retaliation claim at all.  This is not the first time we have seen an attempt at this type of maneuver -- in Snyder, the plaintiff similarly abandoned his claims of violations of equal protection and substantive due process, opting instead to propose a claim of First Amendment retaliation.  See id. at 50.  We held there, as we now hold here, that claim waived.  See id. at 51; see also Johnston v. Holiday Inns, Inc., 595 F.2d 890, 894 (1st Cir. 1979) ("It is by now axiomatic that an issue not presented to the trial court cannot be raised for the first time on appeal." (citations omitted)).  The point at which Ember and The Port should have revealed their claim of First Amendment retaliation has long passed.

## 2. Fourteenth Amendment

Ember and The Port next allege violations of their Fourteenth Amendment rights.  The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

- 15 -

U.S. Const. amend. XIV, § 1. Put differently, "certain substantive rights -- life, liberty, and property -- cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). "In cases of denial of a local license or permit, the standard for determining whether government conduct constitutes either a substantive due process or an equal protection violation 'is so similar as to compress the inquiries into one.'" Collins v. Nuzzo, 244 F.3d 246, 250 (1st Cir. 2001) (quoting Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000)). We thus analyze Ember and The Port's substantive due process and equal protection claims in conjunction here.

### 3. Substantive Due Process and Equal Protection

To adequately plead a substantive due process claim, a plaintiff must allege "a deprivation of a protected interest in life, liberty, or property." See Rivera v. Rhode Island, 402 F.3d 27, 33-34 (1st Cir. 2005) (first citing R.I. Bhd. of Corr. Officers v. Rhode Island, 357 F.3d 42, 49 (1st Cir. 2004); and then citing Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002)). A complaint must also contain facts sufficient to show an "abuse of government power that shocks the conscience" or "action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." Collins, 244 F.3d at 250 (citation omitted). This standard is an unforgiving one, ensuring that federal judges do not wade into territory "traditionally reserved

- 16 -

for state and local tribunals." Id. at 251 (quoting Nestor Colón Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992)).

The important inquiry in examining whether substantive due process has been violated is whether "some basic and fundamental principle has been transgressed." Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990) (citation omitted). In short, the "substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong." Pagán v. Calderón, 448 F.3d 16, 33 (1st Cir. 2006) (citations omitted).

Ember and The Port contend that Harwich violated their due process rights by unlawfully delaying renewal of their liquor and entertainment licenses.[6] They argue that Harwich dragged them

---

[6] In their reply brief, citing our decision in Nestor Colón, Ember and The Port state: "Where, as here, Plaintiffs have plausibly stated a claim for violation of Plaintiffs' First Amendment freedoms, Plaintiffs abandon their substantive due process claim rather than enter into the 'uncharted thicket of substantive due process.'" It is, thus, unclear which of the Plaintiffs-Appellants' claims they contend are still live. As Ember and The Port did not, in fact, plausibly state a claim for violation of their First Amendment freedoms, we address their substantive due process claim. See Caz v. Garland, 84 F.4th 22, 30 (1st Cir. 2023) (first citing Vaz Dos Reis v. Holder, 606 F.3d 1, 4 n.3 (1st Cir. 2010); and then citing Kheireddine v. Gonzales, 427 F.3d 80, 86 n.6 (1st Cir. 2005)) (ignoring a waiver of an argument and considering the "argument's merits for the sake of completeness").

through "a series of untimely, costly, protracted, non-statutory and unconstitutional public hearings."  During these hearings, Ember and The Port's counsel was allegedly muted and unable to "meaningfully cross-examine witnesses."

Here, at the pleadings stage, Ember and The Port "must point, with at least some minimal specificity, to the rudimentary facts supporting" their claim.  Nestor Colón, 964 F.2d at 39 (first citing Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1019 (1st Cir. 1979); and then citing Fisher v. Flynn, 598 F.2d 663, 665 (1st Cir. 1979)).  None of Ember and The Port's allegations come close to reaching the level of "extreme and egregious" conduct that we have held is necessary.  See DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005).  In Collins, we held that a municipal board did not abuse its government powers when it denied a license to operate a used car lot.  244 F.3d at 248.  As with the licensure denial in Collins, we note that the complaint here -- recounting how Harwich sparred with Ember and The Port over how they operated their businesses -- evidences a contentious relationship.  See id. But, as in Collins, we will not label the Board's actions here "legally irrational" solely upon a showing of interpersonal acrimony.  See id. at 251; see also Cordi-Allen v. Conlon, 494 F.3d 245, 255 (1st Cir. 2007) (affirming a grant of summary judgment in favor of the Town even where "the record reflect[ed] that the Town ha[d] not been particularly accommodating").  It was

entirely legally rational for the Town to enforce its ordinances and guidelines and to impose reasonable sanctions when those ordinances were ignored.

Ember and The Port insist that the district court "erred when it limited its review [of] Plaintiffs' due process claims solely to abuses of government power that 'shock[] the conscience' when a due process violation also occurs when the government action is not sufficiently keyed to any legitimate state interest." In making this argument, Ember and The Port misread our case law. In actuality, "conscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action." DePoutot, 424 F.3d at 118 n.4 (citations omitted).

The district court thus correctly held that no substantive due process violation existed. For similar reasons, see Collins, 244 F.3d at 250, Ember and The Port's equal protection argument fails.

### 4. Procedural Due Process

Ember and The Port contend that Harwich violated their procedural due process rights by unlawfully delaying renewal of their liquor and entertainment licenses. On appeal, all parties' briefing on this issue is, well, brief. We follow their lead.

"Where state procedures -- though arguably imperfect -- provide a suitable form of predeprivation hearing coupled with the availability of meaningful judicial review, the

fourteenth amendment guarantee of procedural due process is not embarrassed."  Chongris, 811 F.2d at 40 (citing Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 829-30 (1st Cir. 1982)).  As also relevant here, the Parratt-Hudson doctrine -- as developed in part in Parratt v. Taylor, 451 U.S. 527 (1981) -- provides:  "When a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, . . . the due process inquiry is limited to the issue of the adequacy of the postdeprivation remedies provided by the state."  Hadfield v. McDonough, 407 F.3d 11, 19 (1st Cir. 2005) (quoting O'Neill v. Baker, 210 F.3d 41, 42 (1st Cir. 2000)).

Here, Ember and The Port insist that the Board did not follow the procedures as required by law.  In their briefing, they argue that "unlawful procedures by the Board occurred on April 27, 2021, . . . without following the procedures prescribed in Governor Baker's Executive Orders Nos. 37 and 50."  They further assert that their right to "procedural due process under" Mass. Cen. Laws ch. 138 was deprived and that chapter 138 "requires fundamentally lawful and unbiased procedures."  Their claims focus on the unauthorized acts of the Board, rather than some alleged deficiency with the state laws and proscribed procedures themselves.  See id. at 20 ("[C]onduct is 'random and unauthorized' within the meaning of Parratt-Hudson when the challenged state

- 20 -

action is a flaw in the official's conduct rather than a flaw in the state law itself." (citation omitted)).

We assume, without deciding, that the Board did engage in unauthorized acts. Thus, the only question is whether Ember and The Port had an adequate postdeprivation remedy under Massachusetts law. See id. at 21. Indeed, they did. As the district court acknowledged, Ember and The Port had access to, and utilized, adequate postdeprivation processes under Mass. Gen. Laws ch. 249, § 4, having filed multiple lawsuits in state court. Ember and The Port also availed themselves of Mass. Gen. Laws ch. 138, § 67 when they filed their appeal with the Alcoholic Beverages Control Commission.[7]

---

[7] Ember and The Port also briefly mention a "facial taking" under the Fifth Amendment. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." Zannino, 895 F.2d at 17. As this argument was neither briefed nor argued below in any depth, it is waived. See id. (noting the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

## C. State Law and Common Law Claims

We turn finally to Ember and The Port's state law claims. Ember and The Port bring both MCRA claims and state constitutional claims.

### 1. MCRA Claim

Ember and The Port claim that the defendants conspired to deny them their rights under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I ("MCRA"), and Articles 12 and 16 of the Massachusetts Declaration of Rights. The MCRA provides a cause of action for a party "whose rights under the Constitution, federal law, or state law have been interfered with by threats, intimidation, or coercion of another." Kelley v. LaForce, 288 F.3d 1, 10 (1st Cir. 2002) (citing the MCRA). The MCRA is co-extensive with § 1983 except on two points. The MCRA: (1) "does not require any state action" and (2) "requires a violation by threats, intimidation, or coercion." Id. (first citing Duca v. Martins, 941 F.Supp. 1281, 1294 (D. Mass. 1996); and then citing Duarte v. Healy, 537 N.E.2d 1230, 1232 (Mass. 1989)).

The Massachusetts Supreme Judicial Court has provided that to establish a claim under the MCRA, a plaintiff "must prove that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be

interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" Bally v. Ne. Univ., 532 N.E.2d 49, 51-52 (Mass. 1989) (quoting Mass. Gen. Laws ch. 12, § 11H). "Whether conduct amounts to threats, intimidation, or coercion is assessed under an objective, 'reasonable person' standard." Salmon v. Lang, 57 F.4th 296, 316-17 (1st Cir. 2022) (citing Planned Parenthood League of Mass., Inc. v. Blake, 631 N.E.2d 985, 990-91 (Mass. 1994)). Under that standard, non-physical acts rarely support a basis for recovery. Id. at 317 (citing Thomas v. Harrington, 909 F.3d 483, 492-93 (1st Cir. 2018)).

We need not spill much ink on this issue. The complaint does not allege that Ember and The Port felt compelled or deterred due to any conduct by the defendants. Rather, Ember and The Port aver the occurrence of only a few "veiled threats." These threats allegedly included former Harwich Board Chair MacAskill stating "kiss the ring" and "good luck." But, "[a]s we have repeatedly stated, the exception for MCRA claims based on non-physical coercion remains a narrow one, and it should not be invoked unless the record resembles the sort of physical, moral, or economic pressure that courts have found sufficient to support a claim under this statute." Id. at 318 (internal quotation marks omitted) (quoting Thomas, 909 F.3d at 493).

- 23 -

The closest Ember and the Port come to pleading the existence of such pressure is the statement that MacAskill "nearly physically assaulted" Jared Brackett (one of the owners of Ember and The Port).[8] The sum total of the allegations describing the near physical assault is that MacAskill and Jared Brackett "exchanged words" and that "MacAskill had to be restrained by others from physically attacking Mr. Brackett." But Ember and The Port do not allege that this incident was connected to the veiled threats from MacAskill, which were made at least a year prior, and Ember and The Port do not allege or plead any additional facts that would show that the near physical assault was intended to coerce or intimidate them into refraining from exercising a legal right. This omission is fatal for MCRA purposes. See Damon v. Hukowicz, 964 F.Supp.2d 120, 150 (D. Mass. 2013) (explaining that the MCRA requires establishing conduct that amounts to "threats, intimidation, or coercion" and "an interference, or an attempt to interfere, with 'rights secured by the constitution or laws of either the United States or Massachusetts'" (citations omitted)).[9]

---

[8] Elsewhere in their brief, Ember and The Port state "Plaintiffs also alleged that Jared Brackett was physically assaulted by former Board chairman, Michael MacAskill." The record makes clear, however, that Brackett was not physically assaulted in fact, but rather "nearly" physically assaulted.

[9] Since we find no merit to any of Ember and The Port's constitutional claims, we do not address Harwich's contention that the Harwich officials are entitled to qualified immunity. See Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 145 n.15

- 24 -

## 2. Civil Conspiracy Claim

Ember and The Port allege common law conspiracy in Count V of their complaint. As the district court recognized, "Massachusetts recognizes two types of civil conspiracy." See Snyder, 812 F.3d at 52 (quoting Taylor v. Am. Chemistry Council, 576 F.3d 16, 34 (1st Cir. 2009)). Put simply, one is a form of vicarious liability, while the other is based on a defendant's ability to exert a peculiar power of coercion while acting in unison. Id. The district court held that Ember and The Port's civil conspiracy claim failed because they did not sufficiently allege either type of civil conspiracy under Massachusetts law. The court further held that there was no allegation that the defendants had "peculiar power or coercion" over Ember and The Port and that there was no allegation that the defendants committed tortious acts in furtherance of any agreement.

Ember and The Port argue that "[i]t is obvious that, as the enforcers of Harwich's liquor license regulations, the Harwich defendants have a 'peculiar power of coercion' over Plaintiffs." In this way, their complaint appears to rely on the second form of civil conspiracy. Ember and The Port's contention focuses only on the Harwich defendants' ability to enforce or deny licenses, but they do not explain how this reflects a particular power of

_____

(1st Cir. 2016) (declining to address arguments on qualified immunity).

coercion the defendants had as a result of working together. See Jurgens v. Abraham, 616 F. Supp. 1381, 1386 (D. Mass. 1985) ("[T]o state a claim of civil conspiracy, plaintiff must allege that defendants, acting in unison, had 'some peculiar power of coercion' over plaintiff that they would not have had if acting independently." (quoting Fleming v. Dane, 22 N.E.2d 609, 611 (Mass. 1939))). Indeed, Ember and The Port do not allege facts sufficient to show that the defendants so acted in concert as to be able to "exert some heightened form of coercion" on the Plaintiffs-Appellants. See Carroll v. Xerox Corp., 294 F.3d 231, 243 (1st Cir. 2002). Ember and The Port's civil conspiracy claim thus fails.

### 3. Defamation

In Count VI, Ember and The Port allege that Sluis made a defamatory statement and false police report about Ember and The Port's violation of Massachusetts COVID-19 restrictions. They also allege Larry Ballantine -- Chairman of the Board -- defamed Ember and The Port regarding the same COVID-19 restrictions. The district court held that Ember and The Port failed to state defamation claims as to both Sluis and Ballantine.

"To properly allege defamation, a plaintiff must specifically identify the allegedly false statement," and "allegation[s] that the defendant made statements that 'cast the plaintiff in a negative light,' but that do[] not identify a

- 26 -

specific statement, [are] not sufficient." Kelleher v. Lowell Gen. Hosp., 152 N.E.3d 126, 131 n.2 (Mass. App. Ct. 2020) (citing Flagg v. AliMed, Inc., 992 N.E.2d 354 (Mass. 2013)).

As to Sluis, Ember and The Port contend that she falsely reported to the Harwich Police that Ember and The Port violated COVID-19 guidance. The complaint mentions Sluis' call to the Harwich Police, but it identifies no objectionable statement. Ember and The Port therefore did not specifically identify any allegedly false statement; their defamation claim fails as to Sluis.

As to Ballantine, Ember and The Port allege that he made a defamatory statement to the Cape Cod Times -- he stated, with regard to Ember's and The Port's alleged violations of the guidance, "Our feeling is this was very flagrant. They ignored the whole of COVID-19 regulations." We assume, without deciding, that this statement was defamatory. Even so, Massachusetts recognizes a conditional common law privilege for otherwise-defamatory statements. See Zeigler v. Rater, 939 F.3d 385, 392-93 (1st Cir. 2019). "Th[is] privilege is particularly important with respect to public officials because the 'threat of defamation suits may deter public officials from complying with their official duties when those duties include the need to make statements on important public issues.'" Lawless v. Estrella, 160

N.E.3d 1253, 1260 (Mass. App. Ct. 2020) (quoting Barrows v. Wareham Fire Dist., 976 N.E.2d 830, 838 (Mass. App. Ct. 2012)).

The defendants argue that this statement was indeed conditionally privileged, citing Lawless, 160 N.E.3d at 1260. Recognizing that statements made by public officials while performing their official duties are conditionally privileged, Ember and The Port argue that it was error for the district court to conclude, before discovery, that Ballantine was acting in his role when he made this statement. See Barrows, 976 N.E.2d at 838-39 (quoting Mulgrew v. Taunton, 574 N.E.2d 389, 392 (Mass. 1991)). Ember and The Port further argue that discovery would aid in determining "Ballantine's mindset in whether he was speaking for himself or for the Board, or whether his statements were made with the Board's blessing." This argument is different, however, than that which Ember and The Port made to the district court. There, Ember and The Port seemingly conceded that a conditional privilege existed, noting that abuse of Ballantine's privilege would cause it to be lost "despite the qualified privilege." Arguments not spelled out squarely and distinctly in the district court are waived." T G Plastics Trading Co., Inc. v. Toray Plastics (Am.), Inc., 775 F.3d 31, 39 (1st Cir. 2014) (cleaned up) (quoting United States v. Samboy, 433 F.3d 154, 161 (1st Cir. 2005)). Ember and The Port's defamation claim fails as to Ballantine for this reason.

- 28 -

As to O'Neill, Ember and The Port allege that O'Neill falsely reported to the Massachusetts Department of Labor Standards and the Harwich Health Agent that she had witnessed Ember and The Port violate their liquor and entertainment licenses and COVID-19 guidance while she was living in Florida. In their complaint, Ember and The Port do not identify any actual statement made by O'Neill. Because the complaint does not sufficiently identify O'Neill's allegedly defamatory statements, Ember and The Port have failed to state a defamation claim against O'Neill.

### 4. Dismissal of State Law Claims with Prejudice

Ember and The Port briefly argue that the district court erred in dismissing the supplemental state law claims with prejudice. We have consistently held, however, that a "federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." See Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (citing Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284, 1287-88 (6th Cir. 1992)). "The baseline rule is that the dismissal of a foundational federal claim does not deprive a federal court of authority to exercise supplemental jurisdiction over pendent state-law claims." Sexual Minorities Uganda v. Lively, 899 F.3d 24, 35 (1st Cir. 2018) (citing Lawless, 894 F.3d at 19). Given the facts and procedural history of this case,

judicial economy, convenience, and fairness support the district court's decision to address the state-law claims.

## D. The Request for Leave to Amend

As a last-ditch attempt, Ember and The Port argue that they should have been "given at least one chance to amend before the district court dismissed the action with prejudice." The crux of their argument is that limited discovery was "necessary to flesh out the allegations and attribute them to particular defendants." In the context of denial of leave to amend, we defer to "the district court's hands-on judgment so long as the record evinces an adequate reason for the denial." Aponte-Torres, 445 F.3d at 58 (citing Grant v. News Grp. Bos., Inc., 55 F.3d 1, 5 (1st Cir. 1995)). A request for leave to amend a complaint is not an appropriate vehicle for a second bite at the apple. See Snyder, 812 F.3d at 51-52. If a "proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009) (citation omitted).

"When a proffered amendment comes too late, would be an exercise in futility, or otherwise would serve no useful purpose, the district court need not allow it." Aponte-Torres, 445 F.3d at 58 (citations omitted). Here, we find an adequate basis for the district court's decision to deny the motion to amend. The

district court found that Ember and The Port had "not specified any additional facts . . . [that] they would include in a further amended complaint."  The district court also stated that, even if Ember and The Port's proposed new allegations were based in fact, "they would not save any of their claims from dismissal."  As we have held, the "absence of supporting information may, in and of itself, be a sufficient reason for the denial of leave to amend." Id. (citations omitted).  Such is the case here.[10]  Further, Ember and The Port did, in fact, amend their complaint once.  See id. ("Plaintiffs must exercise due diligence in amending their complaints.  As a corollary of that principle, busy trial courts, in the responsible exercise of their case management functions, may refuse to allow plaintiffs an endless number of trips to the well.").  The district court acted well within its discretion in denying the second motion to amend.

### III. CONCLUSION

For the foregoing reasons, the district court's grant of dismissal, grant of judgment on the pleadings, and denial of Ember and The Port's second request for leave to amend are **AFFIRMED**.

---

[10] Ember and The Port's argument that limited discovery was necessary is not timely.  As the defendants point out, Ember and The Port did not make this argument, or request discovery in their opposition to the motion to dismiss, below.  See Zannino, 895 F.2d at 17.

- 31 -